SHERRY B. SHAVIT, ESQ.; STATE BAR NO.: 193222
JENNIFER S. MCGEORGE, ESQ.; STATE BAR NO. 221679
**THARPE & HOWELL, LLP**
**15250 Ventura Blvd., Ninth Floor**
**Sherman Oaks, California  91403**
**Tel: (818) 205-9955**
**Fax: (818) 205-9944**
**E-mail: sshavit@tharpe-howell.com;**
**jmcgeorge@tharpe-howell.com**

Attorneys for Defendant,
SECURITAS SECURITY SERVICES,
USA, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| TAUNYA SPERRY,  an individual<br><br>                     Plaintiff,<br><br>v.<br><br>SECURITAS SECURITY SERVICES<br>USA, INC., a business entity, form<br>unknown; and Does 1 through 25,<br>inclusive;<br><br>                     Defendants. | Civil No. C 13-00906 RS<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:          April 3, 2014<br>Time:          1:30 p.m.<br>Courtroom: 3 |

THARPE & HOWELL, LLP
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403-3221

## I.   INTRODUCTION

Sperry's Opposition is nothing more than an attempt to confuse the Court and divert attention from the undisputed facts which compel the entry of partial summary judgment. Sperry misreads the statutes and refuses to acknowledge that <u>Vranish v. ExxonMobil Corp.</u> confirms she cannot prevail on her state-based overtime and meal period claims arising on or after January 1, 2010 as a matter of law because she was covered by a qualifying collective bargaining agreement (CBA) and side agreements, and therefore Labor Code §§514 and 512(e) exempts her from these rules.

The Labor Management Relations Act (LMRA) §301 also preempts these claims because, indisputably: (1) her rights arise from the CBA and side agreements and not from state statute, and (2) adjudication of her claims requires interpretation and analysis of the agreements. Sperry further admits receiving lawful meal and rest periods, thus her meal and rest period claims fail on the merits. She also admittedly was subject to several written agreements governing her compensation, which dispose of her FLSA claim. Finally, Sperry's paystub and §17200 claims fail to the extent they are predicated on the success of the aforementioned claims. For these reasons, SUSA requests that its motion for partial summary judgment be granted.

## II.   THE LABOR CODE §§514 AND 512(e) EXEMPTIONS ARE SATISFIED.

To satisfy the Labor Code §§514 and 512(e) exemptions, a CBA must provide, *inter alia*: (1) "a regular hourly rate of pay of not less than 30 percent more than the state minimum wage" and (2) "premium wage rates for *all overtime hours worked*." (Labor Code §§512(e), 514, emphasis added.) Sperry contends neither element is satisfied because the CBA does not compensate her for hours she spent sleeping, which she claims are "hours worked" under California law. (Opp., pp. 8-9.) Sperry's argument fails because she erroneously conflates these two *different* elements of the §§514 and 512(e) exemptions. Sperry's contention that the 24-hour side agreement is not valid also lacks merit because she fails to provide any evidence disputing its existence, or that of its material term relevant to this litigation.

THARPE & HOWELL, LLP
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403-3221

**A.   The CBA Provides a Regular Hourly Rate of at Least $10.40.**

The first element requires the CBA to set forth a minimum hourly wage rate of at least $10.40 (*i.e.,* 30% above the state minimum wage of $8.00.) (Labor Code §§512(e), 514.) Despite Sperry's contention to the contrary, the phrase "all hours worked" is *not* found in the first element whatsoever. It is **undisputed** that as of January 1, 2010, the CBA satisfies this requirement.[1] (CBA, Ex. 1 to Ferko Dec. (hereinafter, "CBA"), Art. 12, p. 13.)

**B.   The Agreements Provide Premium Rates for All Overtime Hours Worked.**

Sperry argues the second element — which applies only to all *overtime* hours worked — is not satisfied because the CBA and side agreements do not adopt the Labor Code §510 definition of "overtime." (Opp. 9:3-4, 16.) As discussed extensively in SUSA's moving papers, this argument has been rejected by a plethora of legislative history, state agency opinions, and most recently in <u>Vranish v. ExxonMobil Corp.</u>, 223 Cal. App. 4th 103 (2014), none of which were addressed in Sperry's Opposition.

In <u>Vranish</u>, the plaintiffs argued the CBA at issue did not qualify for the §514 exemption because it did not provide for premium compensation for all "overtime hours worked," as the word "overtime" is defined in §510. The trial court found this argument "fundamentally flawed because it fails to acknowledge that they are **completely exempt** from section 510 by the collective bargaining exception contained in section 514." (*Id.* at 108.) The appellate court affirmed, analyzing the <u>identical</u> legislative history, IWC Statement of the Basis, DLSE Manual provisions, and DLSE Opinion letters that SUSA cited in its moving papers, and held that "the phrase 'overtime hours worked' is ***not*** defined by section 510," and a CBA need not adopt the §510 "overtime" definition to qualify for the §514 exemption. (*Id.* at 112-113.) The court confirmed parties to a CBA "'**are free to bargain** over not only the

---

[1] SUSA does not dispute Labor Code §512(e) became effective January 1, 2011.

THARPE & HOWELL, LLP
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403-3221

1    *rate* of overtime pay, but also ***when* overtime pay will begin**'" and "the definition of

2    the word 'overtime' is **left to the parties**, the rationale being that **the worker is**

3    **adequately protected.**" (*Id.* at 111-112 (italics in original, bold emphasis added).)

4         Instead of addressing <u>Vranish</u>, Sperry instead *exclusively* relies on the Ninth

5    Circuit's decision in <u>Gregory v. SCIE</u>, 317 F.3d 1050 (9th Cir. 2003), arguing that

6    case is "the very first place this court should look for guidance" on the §514 and

7    512(e) exemptions. (Opp. 8:13.) However, in interpreting state law, state court

8    decisions prevail over federal decisions. (<u>Howard Contracting, Inc. v. G.A.</u>

9    <u>MacDonald Construction Co.</u>, 71 Cal. App. 4th 38, 52 (1998); <u>Aiuto v. City and</u>

10   <u>County of San Francisco</u>, 201 Cal. App. 4th 1347, 1359 n. 7 (2011).) Thus, <u>Vranish</u>

11   controls, not <u>Gregory</u>. The <u>Vranish</u> court expressly found <u>Gregory</u> to be "of no

12   assistance" to the plaintiffs because it did not decide the §514 exemption issue, but

13   rather remanded the issue to state court.[2] (223 Cal. App. 4th at 110, n.3.)

14        Here, SUSA and the unions agreed to define "overtime" to include hours

15   worked in excess of 40 per workweek, excluding sleep time.[3] Pursuant to <u>Vranish</u>

16   and the other authority SUSA cited in its moving papers, this is entirely lawful.

17   **C.   The Undisputed Facts Demonstrate a Valid 24-Hour Side Agreement.**

18        Sperry argues the 24-hour side agreement is not "valid" because SUSA is

19   unable to present a physical copy of it. (Opp. 9:26-10:1.) However, a party may

20   establish the content of a writing through oral testimony "if the proponent does not

21   have possession or control of a copy of the writing and the original is lost or has been

22

23   [2] Even if this court considered <u>Gregory</u>, the case is inapposite. While the employer
     argued the §514 exemption barred the plaintiff's §510(a) claim, the CBA did ***not***

24   define "overtime" and was silent as to whether overtime would be paid for certain
     work. (317 F.3d at 1055 n.5 (dissenting opinion).) However, the employer offered its

25   own ***interpretation*** of the CBA to require overtime compensation consistent with the
     §510(a) definition of "overtime." Given this admission, and in the absence of an

26   alternative definition in the CBA, the Ninth Circuit remanded the issue of whether
     the §514 exemption even applied. Unlike the employer in <u>Gregory</u>, SUSA interprets

27   and applies the definition of "overtime" as negotiated and set forth in the applicable
     CBA and side agreements, not as defined in §510, which it has a legal right to do.

28   [3] Sleep time is not compensated unless the EMT is called to work, in which case, the
     EMT is compensated at double time. (Ferko Depo. 46:16-22 and Ex. 3 thereto.)

1    destroyed without fraudulent intent on the part of the proponent of the evidence."

2    (Evid. Code §1523(b).) Michael Ferko testified a physical copy of the 24-hour side

3    agreement cannot be located, despite SUSA's efforts to do so (Ferko Depo. 56:22-

4    57:14; 67:10-68:2), and Sperry has not submitted any evidence of fraudulent intent.

5         Sperry's argument that "SUSA does not know if the proposal and the [24-hour

6    side] agreement contain the same substantive terms" also is immaterial. (Opp. 10:1-

7    2.) Only an agreement's *material* terms need to be established, which can be

8    accomplished through secondary evidence. (Evid. Code §1521(a).) For purposes

9    here, the term of the 24-hour side agreement that is material is that EMTs working at

10   USS-POSCO would not be compensated for sleep time hours unless called to work.

11   **Sperry does not dispute the existence of this term**. Indeed, Sperry acknowledged

12   the 24-hour shift agreement's existence, as well as the fact that she understood and

13   expressly agreed she would not be compensated for her four-hour sleep time

14   ("downtime") periods. (Sperry Depo. 90:10-91:2; 107:17-21, and Ex. 5 thereto.)

15   Michael Ferko likewise testified the 24-hour side agreement contained this provision.

16   (Ferko Depo. 44:14-20; 46:8-47:4; 48:5-14; 53:23-54:1.)

17        Sperry's search for alternative workweek election results (Opp. 10:7-15)

18   likewise does not dispute the 24-hour side agreement's existence because the

19   company was not required to conduct an election to adopt the agreement, and Sperry

20   cites no authority to the contrary.[4] Sperry also cannot create a disputed material fact

21   based on pure *speculation* as to whether Pinkerton, Inc. adopted the 24-hour side

22   agreement. (Nelson v. City of Davis, 571 F.3d 924, 929 (9th Cir. Cal. 2009); Nelson

23   v. Pima Cmty. Coll., 83 F.3d 1075, 1081-82 (9th Cir. 1996); *see* Opp. 10:16-23.) Mr.

24   Ferko testified the 24-hour side agreement was indeed adopted via the January 2000

25

26   [4] The alternative workweek election process under Labor Code §510(a)(2) is an
     alternative way to waive daily overtime requirements when not covered by Labor
27   Code §514. (Vranish at 108, 113.) Even if an election was required, it was done.
     Sperry attempts to cast doubt on this, but fails to mention that by this time APS had
28   already been acquired, and thus, any election results would have been submitted by
     Pinkerton's, Inc. and not APS. (Ferko Dec. ¶5; and Ex. 2 thereto.)

THARPE & HOWELL, LLP
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403-3221

THARPE & HOWELL, LLP
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403-3221

1    agreement between Pinkerton, Inc. and the union. (Ferko Depo. 59:24-61:20; 62:19-

2    63:1; Ferko Dec. ¶5, Ex. 2.) Finally, Sperry's argument that the 24-hour side

3    agreement is invalid because it is not mentioned in the main CBA defies common

4    sense. The main CBA is a *multi-employer* CBA governing security services provided

5    at numerous locations in several counties. A side agreement with *one* employer at

6    *one* client site would, of course, not be mentioned.

7        Sperry fails to genuinely dispute the 24-hour side agreement existed and

8    contained the material term that EMTs at USS-POSCO would not be paid for their

9    four hours of downtime unless called to work. Thus, the §§514 and 512(e)

10   exemptions are indisputably satisfied.

11                    **III.  LMRA PREEMPTION IS ESTABLISHED.**

12       To the extent Labor Code §§514 and 512(e) bar Sperry's second and third

13   causes of action, LMRA §301 also preempts them because Sperry's overtime and

14   meal periods rights "arise from" the CBA, and not state law. Additionally, the court

15   must analyze the relevant CBA provisions and side agreements to determine if the

16   exemptions are satisfied, and consider the terms of Sperry's On-Duty Meal Period

17   Agreement, the deposition testimony of Sperry and Ferko, Ferko's declaration,

18   relevant supporting exhibits, and additional evidence documenting the intentions of

19   the union(s) and the employer at the bargaining table and in later adopting the

20   agreements. The court cannot simply "look to" the CBA and side agreements to

21   decide these issues — it must analyze the CBA along with this multiplicity of

22   evidence. Sperry has failed to establish that such analysis is not required.

23       Sperry's contention that the specific words "regular rate," "premium rate," and

24   "overtime" must be contained in a CBA is based on a misreading of SUSA's moving

25   papers. (Opp. 12:4-23.) These terms are part of the elements of §§514 and 512(e),

26   but are not required to be in a CBA, nor did SUSA suggest otherwise. SUSA instead

27   argues that the *provisions* of the CBA *relating to* these elements need to be analyzed.

28       The absence of Sperry's specific wage rate in the CBA and side agreements

1  also does not defeat preemption.[5] The CBA itself makes clear the employer has the

2  discretion to increase wage rates of any employee. (*E.g.*, CBA, §12.5.) Moreover,

3  §§514 and 512(e) do not require each employee's specific wage rate to be set forth in

4  the CBA. For these reasons, Section 301 preemption is clearly established.

## IV.  SPERRY INDISPUTABLY TOOK HER ON-DUTY MEAL PERIODS PURSUANT TO A VALID ON-DUTY MEAL PERIOD AGREEMENT.

Sperry does not dispute she signed an On-Duty Meal Period Agreement and

the nature of her work justified an on-duty meal. Instead, Sperry argues that

compliance with Wage Order 4-2001's on-duty meal period provision is an

"affirmative defense" not pled by SUSA in its Answer.[6] This is wrong.

Wage Order 4-2001 §11(A) reads: "**Unless** the employee is relieved of all duty

during a 30 minute meal period, the meal period **shall be considered** an 'on duty'

meal period and counted as time worked." (Emphasis added.)  Thus, the default is

having an *on duty* meal period, not an off-duty meal period.  The California Supreme

Court clarified this in Brinker Restaurant Corp. v. Superior Court:

> Parsed, the [wage] order's text spells out the nature of "on duty" meal periods and the precise circumstances in which they are permitted. It follows that ***absent such circumstances***, an employer is obligated to provide an "off-duty" meal period.  The attributes of such off-duty meal periods are evident from the nature of their ***reciprocal***, on duty meal periods. 53 Cal. 4[th] at 1035 (emphasis added).

Brinker clearly identifies on and off duty breaks as distinct alternatives:

> [A]n employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on duty meal period if circumstances permit. (53 Cal.4[th] 1004, 1039.)

On-duty breaks are one of three equally lawful options, and are not an

---

[5] The absence of her specific pay rate only serves to highlight that Sperry's payroll records would <u>also</u> be needed to analyze whether she was compensated properly, and the Court could not simply "look to" the CBA to decide the merits.

[6] Sperry disingenuously claims SUSA raised the "nature of the work" issue "for the first time" in its moving papers. (Opp. 13:15-18.) However, SUSA propounded Interrogatories to Sperry on this issue in October 2013, which Sperry responded to, *without objection*, in November 2013. (Exs. 8, 9 to Shavit Dec.) Sperry deposed Michael Ferko in December 2013, but elected not to question him about this issue.

THARPE & HOWELL, LLP
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403-3221

THARPE & HOWELL, LLP
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403-3221

1   "affirmative defense."[7] The success of Sperry's meal period claim does not depend

2   on whether she received "off duty" breaks, but rather whether she received a lawful

3   meal period at all. Because Sperry does not dispute the nature of her work justified

4   an on-duty meal, SUSA should prevail on this basis alone.

5          Sperry's next arguments assume SUSA contends she received off-duty meal

6   periods. This is not correct. SUSA contends Sperry's Daily Activity Reports

7   ("DARs") and deposition testimony reveal multiple admissions to taking on-duty

8   meal periods of at least 45 minutes to 1 hour, for breakfast, lunch, and dinner, during

9   24-hour shifts. (Motion, p. 20:25-21:5.) Because her meal periods were on-duty and

10  paid, SUSA was not required to "relinquish all control."  (Opp. 13: 23-25.)

11         Sperry's final argument that the CBA does not provide for a second meal

12  period also lacks merit. **Nothing** in the CBA limits employees to one meal period.

13  Sperry admits taking multiple meal periods per shift. (Opp. 14:10-13.) Sperry's

14  argument that the timing of her meal periods sometimes extended beyond the tenth

15  hour does not save her claim because this merely shows Sperry took her meal

16  periods when she pleased, and that the nature of her work sometimes prevented her

17  from taking meal periods on a consistent schedule. The CBA acknowledges the latter

18  situation, and expressly states that in such circumstances, "the Company will make

19  reasonable effort to arrange for the employee to eat after twelve (12) hours and every

20  six (6) consecutive hours thereafter." (CBA §13.5.) Therefore, because there is no

21  genuine dispute that Sperry signed a valid on-duty meal period agreement, the nature

22  of her work justified an on-duty meal, and she actually received on-duty meal

23  periods, her third cause must be summarily adjudicated in SUSA's favor.

24              **V.    SPERRY ADMITS SHE TOOK HER REST PERIODS.**

25         SUSA has provided multiple examples of Sperry's **admissions** to taking

26  multiple rest periods during her shifts. (Motion, p. 21:13-21.) Because she cannot

27

28  ---
     [7] To the extent the Court disagrees, SUSA respectfully requests leave to amend its
     answer to add this purported affirmative defense.

THARPE & HOWELL, LLP
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403-3221

1  dispute this deposition testimony, Sperry instead attempts to poke holes in the CBA

2  by claiming it does not authorize her to take sufficient rest periods during a 24-hour

3  shift. (Opp. 14:24-28.) Sperry is wrong.

4  While Sperry correctly notes the CBA provides for two paid 15-minute rest

5  periods,[8] it **also** provides that "if the Company has previously specified relief time in

6  excess of that provided herein, such additional relief time shall continue to be

7  provided to security employees. . ." (CBA §13.6.) **Nothing** in the CBA limits rest

8  periods to two per shift.

9  There also is no legal requirement that a rest period policy be written, only

10  that rest periods be authorized and permitted. (<u>Brinker</u>, at 1028-1031.) Sperry

11  **admittedly knew** she was authorized and permitted to take multiple rest periods

12  throughout her shift, including <u>regularly</u> engaging in multiple recreational activities.

13  (*See* Motion 21:13-28.) Sperry documented these breaks and activities on her DARs.

14  (Ex. 3 to Ferko Dec.)[9] The CBA further notes that "[a]n employee who did not

15  receive a rest break must indicate such on his or her time card or Daily Activity

16  Report for that week and initial such in the box indicating such; otherwise, the

17  Company may assume that the employee received all rest breaks as required by law."

18  (CBA §13.6.) Sperry fails to cite a *single one* of her DARs — all of which are in

19  evidence before the court — wherein she documented **ever** missing a rest period.

20  Sperry's contention that she was never relieved of duty because "she was

21  required at all times to respond to emergencies within a two-minute period" also fails

22  to save her rest period claim. Neither the Wage Order, nor <u>Brinker</u>, requires an

23  employee to not be on call during a rest period, nor has Sperry cited any authority to

24

25  [8] Again, the main CBA is a *multi-employer* agreement. Thus, not every covered
26  employee will work the same shifts or be subject to the same CBA side agreements
  (hence, the need for side agreements). Rather, it stands to reason that the main CBA
27  is drafted assuming a standard 8-hour shift.
  [9] If rest periods were not authorized and permitted, it stands to reason that SUSA
28  would have disciplined Sperry for taking them upon review of her DARs; yet, Sperry
  offers no evidence that any such discipline ever occurred.

1  support this proposition. In fact, Sperry rarely had to respond to emergencies, and

2  even when she did, they were resolved in minimal time. (Ferko Dec. ¶7; Ex. 4.)

3  Sperry merely had to be capable of responding in the event an emergency occurred,

4  but could certainly go back and take a break after dealing with the emergency.

5  Sperry's admissions compel adjudication of this claim in SUSA's favor.

### VI.  SPERRY'S FLSA CLAIM FAILS BECAUSE SHE WAS CONTRACTUALLY BOUND TO ALTERNATIVE TERMS OF COMPENSATION.

8          As discussed more fully in SUSA's moving papers, compensability under the

9  FLSA for downtime "involves scrutiny and construction *of the agreements between*

10  *the particular parties*, appraisal of their practical construction of the working

11  agreement *by conduct*, consideration of the nature of the service and its relation to

12  the waiting time, and all the surrounding circumstances. . . The law does not impose

13  an arrangement upon the parties. It imposes upon the courts the task of finding what

14  the arrangement was." (Skidmore v. Swift and Co., 323 U.S. 134, 137 (1944).)

15  Sperry acknowledges that "all the surrounding circumstances" are to be considered,

16  including the agreement between the parties, yet contends all this Court should

17  consider is Code of Federal Regulations [CFR] §§785.20-785.23. (Opp. 4:10-14.)

18  Her argument should be rejected.

19          While courts may look to CFRs for guidance, the regulations are **not** binding.

20  (Beaston v. Scotland School for Vets. Children, 693 F.Supp. 234, 237 (D. Pa. 1988).)

21  At least one court has refused to adopt the sleep time CFRs "as the rule of law"

22  because to do so "would require a court to ignore an otherwise valid agreement

23  between an employer and employee concerning compensable sleep time as well as

24  all other relevant factors." (*Id.* at 238.) The regulations "should not be the sole, or

25  even the most important, consideration. . . Rather than blindly follow the interpretive

26  regulations, the court [should] examine all of the circumstances of [the] case, as

27  directed by the Supreme Court." (*Ibid.*) Federal courts also have upheld

28  compensation agreements, even in circumstances where, as here, employees are not

THARPE & HOWELL, LLP
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403-3221

1  paid for hours they are required to remain on the employer's premises. (*Id.* at 240

2  (upholding agreement specifying that sleep time hours were not "hours worked" and

3  not compensable); *see also* <u>Rousseau v. Teledyne Movible Offshore, Inc.</u>, 805 F.2d

4  1245 (5th Cir. 1986); <u>Allen v. Atlantic Richfield Co.</u>, 724 F.2d 1131 (5th Cir.1984).)

5      In applying the <u>Skidmore</u> factors, Sperry's FLSA claim must fail because: (1)

6  she was subject to written agreements to exclude sleep time from her compensation

7  (Ferko Dec. ¶¶3, 4, 5 and Exs. 1, 2  attached thereto; Ferko Depo. 31:18-38:1; 48:8-

8  14; 53:12-54:1, and Exs. 2, 3 attached thereto), (2) she admittedly was well aware of

9  this arrangement, and the fact that she was being compensated ***only*** for hours

10  actually worked (Sperry Depo. 107:11-21; Exs. 4, 5, attached thereto); and (3) she

11  continued to work for SUSA for several years with full knowledge she would not be

12  compensated for sleep time. (Sperry Depo. 30:16-31:4.)

## VII.   SPERRY'S FIFTH AND SEVENTH DERIVATIVE CLAIMS FAIL TO THE EXTENT HER OTHER CLAIMS FAIL.

      Because Sperry's Fifth and Seventh causes of action concededly are derivative

of her remaining claims (Opp. 15:7-22), they only survive if her remaining claims

survive. Even to the extent Plaintiff's §17200 claim may survive for the time period

of January 2, 2009 to December 31, 2009 for the overtime claim and/or to December

31, 2010 for the meal period claim, the rest of this claim may nevertheless be

partially summarily adjudicated. (Fed. R. Civ. P. 56(a).)

## VIII.  CONCLUSION

      For the foregoing reasons, SUSA respectfully requests that it motion for

partial summary judgment be granted.

                                    Respectfully submitted,

Dated: March 20, 2014               THARPE & HOWELL, LLP


                            By:     s/ Sherry B. Shavit
                                    _____
                                    SHERRY B. SHAVIT
                                    JENNIFER S. MCGEORGE
                                    Attorneys for Defendant, SECURITAS
                                    SECURITY SERVICES. USA. INC.

THARPE & HOWELL, LLP
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403-3221