IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TAUNYA SPERRY,

    Plaintiff,

v.

SECURITAS SECURITY SERVICES, USA, INC., et al.,

    Defendants.

No. C 13-0906 RS

**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.   INTRODUCTION

In this wage-and-hour action arising under federal and California law, plaintiff Taunya Sperry sues her former employer, Securitas Security Services, USA, Inc. ("SUSA"). Sperry, who worked 12- and 24-hour shifts as a security guard and EMT at a steel finishing plant, claims she was systematically underpaid and deprived of required meal and rest breaks. SUSA moves for partial summary judgment on several of Sperry's claims. Because SUSA fails to show that it is entitled to judgment as a matter of law on any claim, the motion is denied in full. As described below, however, SUSA may amend its Answer to assert an additional affirmative defense.

## II.   BACKGROUND

Taunya Sperry was employed by SUSA as an Emergency Medical Technician ("EMT") and security guard at USS-POSCO Industries, a steel finishing plant located in Pittsburg, California. Sperry roamed the premises during each shift, responding to medical, safety, or security emergencies as needed. As a roving security guard, she was also required to conduct regular

internal and external patrols of the facility, handle vehicle and bag inspections, and participate in training drills, among other tasks.

Sperry's employment was governed by a multi-employer collective bargaining agreement ("CBA") negotiated between various security firms (including SUSA) and Service Employees International Union Local 24/7. Several other agreements are relevant as well:

- In 1993, SUSA's predecessor (American Protective Services or "APS") entered into a "side" agreement with SEUI 24/7's predecessor (the International Union of Security Officers or "IUSO") permitting EMTs to work 12-hour shifts at the USS-POSCO site. This agreement was reduced to writing in 2000.
- In or about 1999 or early 2000, the EMTs at USS-POSCO requested to be scheduled for 24-hour shifts. APS then entered into a second side agreement with IUSO providing terms for 24-hour EMT shifts. While there is evidence of a written *proposal* for this agreement, SUSA has been unable to produce a written copy of the final agreement.
- APS was later acquired by Pinkerton Inc. SUSA contends that Pinkerton agreed to honor the 24-hour shift agreement. Pinkerton was later purchased by SUSA.

For each 24-hour shift, Sperry was paid twenty hours of her "straight time" wage, which was $17.44. She was uncompensated for the other four hours, which were considered "sleep time" or "downtime." During that time, Sperry was permitted to do as she pleased, so long as she remained on the premises and stayed "on call." When a medical emergency arose, or if immediate drug testing was required, Sperry was expected to respond within two minutes. When such an emergency occurred during her downtime, she was paid double-time while responding. Otherwise, those four hours remained unpaid.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. Proc. 56(c)(1)(A). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3; *see also* Fed. R. Civ. Proc. 56(c)(1)(B). A genuine issue of material fact is one that could reasonably be resolved in favor

of the nonmoving party, and which could "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See id.* at 255.

## IV.   DISCUSSION

### A. First Claim: FLSA Overtime

When an employee is subject to the overtime protections of the Fair Labor Standards Act (FLSA), her employer must pay an overtime "premium" wage for all hours the employee works in excess of forty in a given workweek. 29 U.S.C. § 207. According to Sperry, the four "sleep time" or "downtime" hours that occurred during each 24-hour shift were not downtime at all; as such, she seeks eight hours of premium overtime compensation for each week during which she worked two 24-hour shifts. SUSA disagrees, arguing that Sperry's downtime was not compensable in the first place.

There is no bright-line test for determining whether an employee must be paid for time spent waiting or resting. "The inquiry into whether 'on-call' or 'waiting' time constitutes compensable 'working' time for purposes of FLSA § 207(a)(1) is particularly challenging." *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 935 (9th Cir. 2004). Whether an employee was "engaged to wait," which is compensable, or "waiting to be engaged," which is not, depends on the circumstances of the particular case. *Id.* The two predominant factors in deciding whether on-call waiting time is compensable overtime are "(1) the degree to which the employee is free to engage in personal activities; and (2) the agreements between the parties." *Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 350 (9th Cir. 1992).

First, the record demonstrates that Sperry enjoyed some freedom to engage in personal activities during the downtime period. According to Sperry's deposition testimony, she used her four-hour break to engage in a variety of personal and recreational activities including sleeping, eating, exercising, showering, and watching television. Her physical freedom was constrained, however, by the requirement that she remain on the premises during the break. Additionally, she was obligated to respond to any emergency calls within two minutes. Because such calls were not

infrequent, the looming possibility of an incoming call somewhat circumscribed Sperry's freedom to engage in personal activities.

SUSA, invoking the second *Owens* factor, emphasizes that Sperry signed an employment contract providing that the four-hour block of sleep time would not be compensable. Moreover, SUSA stresses, she worked under these terms for several years. To be sure, Sperry's assent to the agreement cuts against the notion that she should be compensated for the downtime. *See Berry v. Cnty. of Sonoma*, 30 F.3d 1174, 1181 (9th Cir. 1994) ("[A]n agreement pursuant to which the employees are to be paid only for time spent actually working, and not merely waiting to work, may suggest the parties do not characterize waiting time as work."). The mere existence of an agreement, however, does not dictate whether the time is compensable—even when coupled with evidence of an employee's continued willingness to work under the agreed-upon terms. *See id.* at 1181 (noting that while agreements are a predominant factor, they do not necessarily control). The FLSA would carry little force if an employee's assent to an otherwise unlawful compensation scheme was sufficient to remove her from the statute's protective ambit. *See Berry*, 30 F.3d at 1181 ("[T]he FLSA was not designed to perpetuate contracts pursuant to which employers fail to compensate employees for work."). Accordingly, SUSA overstates its case by arguing that Sperry's acceptance of this arrangement renders her FLSA claim "meritless." (Def. Repl., ECF No. 31, 24:20).

Balancing the first and second *Owens* factors, it is not immediately clear whether Sperry should be compensated for the four-hour break required during each 24-hour shift. This two-factor inquiry does not, however, mark the end of the analysis. Importantly, the DOJ has promulgated numerous regulations governing the compensability of waiting time, and Sperry contends that these regulations apply here. One such regulation addresses the compensability of sleep time during a 24-hour shift:

> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep.

29 C.F.R. § 785.22(a). Here, Sperry *did* agree to exclude a sleeping period of "not more than 8 hours" from hours worked—she agreed to set aside four hours. Such exclusions, however, are only valid where the employee is given the opportunity to have a minimum of *five* hours of uninterrupted sleep:

> For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.

29 C.F.R. § 785.22(b). Under this regulation, because Sperry could not get at least five hours of sleep during her 24-hour shifts, "the entire time is working time." *Id.*

In response, SUSA correctly emphasizes that these interpretive rules are not binding; they are only entitled "respect" to the extent they have the "power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Yet while these DOL regulations are not automatically due deference, many federal courts have looked to 29 C.F.R. §§ 785.14–23 when resolving FLSA overtime disputes. *See Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 940 (9th Cir. 2004) ("Although these interpretive rules are non-binding . . . we have nonetheless—along with our sister circuits—turned to these longstanding DOL regulations in resolving FLSA waiting time disputes."); *Braziel v. Tobosa Developmental Servs.*, 166 F.3d 1061, 1063 (10th Cir. 1999) (adopting the five-hour minimum for valid sleep time exclusions).

SUSA contends that § 785.22(b) is unpersuasive here, where the terms of the 24-hour compensation scheme arguably inure to the employee's benefit. SUSA argues that by working two 24-hour shifts, USS-POSCO EMT/guard employees complete a forty-hour workweek in just two calendar days, freeing the remainder of the week for other pursuits. Indeed, according to deposition testimony from SUSA manager Michael Ferko, the EMTs *requested* to work under these conditions. Yet regardless of how the purported agreement came to be, the employer does little to explain why the DOL's interpretive rules should be disregarded here. Section § 785.22 makes clear that when an employee is required to work a 24-hour shift, she can agree to exclude compensable time *only* if she can get at least five uninterrupted hours of sleep. Here, there is no debate that Sperry was unable to achieve five uninterrupted hours during each 24-hour shift. Accordingly, SUSA falls short of complying with § 785.22, a persuasive guidepost for determining whether agreed-upon "downtime"

is compensable during a 24-hour shift. Because the entire 24-hour shift was compensable, SUSA's motion for summary judgment is denied as to the first claim.

B. Second Claim: California Labor Code Overtime (Cal. Lab. Code § 1194(a))

The California Labor Code, like the FLSA, mandates that covered employees be paid an overtime premium for any hours worked in excess of forty in a given workweek. Cal. Lab. Code § 510. It also provides a significant requirement not found in the FLSA: that employees working more than eight hours in a single workday be paid an overtime premium, too. *Id.* Sperry, who worked many 24-hour shifts, claims an entitlement to overtime premium wages for all hours worked more than eight in a single day. In response, SUSA raises two defenses: that Sperry is exempted from the protections afforded by § 510 and that Sperry's state law overtime claim is preempted by the Labor Management Relations Act.

*i.   § 514 Exemption*

The Labor Code exempts certain unionized employees from the protections afforded by § 510:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514. The parties disagree as to whether these conditions were satisfied by the applicable CBA. While SUSA maintains that its agreement with the union covered all the requisite bases, Sperry alleges three specific defects: (1) she was not paid for sleep time, and thus was not paid adequately for all hours worked, (2) she was not paid a premium rate for overtime hours, and (3) the "side agreement" authorizing 24-hour shifts is not a valid collective bargaining agreement.

First, for the exemption to apply, the CBA must provide "a regular hourly rate of pay . . . of not less than 30 percent more than the state minimum wage." *Id.* The state minimum wage is $8.00/hour.[1] Accordingly, for the § 514 exemption to be satisfied, the CBA must set forth a minimum hourly wage rate of at least $10.40.[2] Sperry, who was paid a regular hourly rate of

---
[1] This same rate was in effect for the duration of the relevant period.
[2] $8.00 x 1.3 (130%) = $10.40.

$17.14, does not contend that the CBA's stated rate was less than $10.40. Rather, she argues that because she was not paid for the four hours of downtime during each 24-hour shift, the CBA cannot be construed as providing a sufficient "regular hourly rate of pay."

When assessing the compensability of sleep time under the Labor Code, California courts follow the federal "sleep time" guidance set forth in 29 CFR § 785.22. *Seymore v. Metson Marine, Inc.*, 194 Cal. App. 4th 361, 381 (2011). Accordingly, employers and employees cannot agree to exclude sleep time from a twenty-four hour shift unless the employee has an opportunity to get at least five hours of uninterrupted sleep. *Id.* Because SUSA failed to compensate Sperry for her downtime, she contends the CBA did not provide "a regular hourly rate of pay . . . of not less than 30 percent more than the state minimum wage." § 514. She further argues that SUSA cannot hurdle this requirement by averaging her $17.14 regular rate across the span of her 24-hour shift. Indeed, California wage law requires that employees be compensated for each hour worked "at either the legal minimum wage or the contractual hourly rate, and compliance cannot be determined by averaging hourly compensation." *Bluford v. Safeway, Inc.*, 216 Cal. App. 4th 864, 872 (2013); *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323-24 (2005) (holding that unlike the FLSA, California minimum wage law does not permit an "averaging method" for achieving compliance).

Accordingly, it does not matter that Sperry's $17.44 wage and the CBA's stated minimum wage both exceed the 130% threshold; because SUSA improperly withheld payment for her sleep time, and because California law requires that employees be compensated for each hour worked without regard to average compensation, the CBA failed to provide "a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."[3] *See* § 514.

Second, Sperry argues the CBA fails to provide "premium wage rates for all overtime hours worked." *See* § 514. The parties dispute how to interpret "overtime" as used in § 514: does the

---

[3] SUSA takes a different view of the statute, arguing that the "regular hourly rate of pay" element is satisfied so long as the wage rate named in the CBA *facially* exceeds the 130% threshold. This position is in tension with the Court of Appeal's admonishment that minimum wage compliance "cannot be determined by averaging hourly compensation." *See Bluford*, 216 Cal. App. 4th at 872. Given the California legislature's apparent intent that minimum wage compliance be assessed on an hour-by-hour basis, it makes little sense that an employer could circumscribe § 510 by drawing up a CBA providing a facially compliant "regular rate," only then to pay that rate for just a portion of the hours worked.

statute mean "overtime" as defined by state law, or may the CBA redefine what constitutes "overtime" in the first place?  The difference is important here: while state law defines overtime as hours worked in excess of eight in a single workday, the CBA provides that overtime only includes those hours worked in excess of forty in one workweek, excluding sleep time.  The California Court of Appeal recently weighed in on this issue, holding in *Vranish v. ExxonMobil Corp.*, 223 Cal. App. 4th 103 (2014), that "the phrase 'overtime hours worked' is not defined by § 510." *Id.* at 112-113.  The court found that parties to a CBA "are free to bargain over not only the *rate* of overtime pay, but also *when* overtime pay will begin." *Id.* at 111 (quotation marks and citation omitted) (emphasis in original).  "[T]he definition of the word 'overtime' is left to the parties, the rationale being that the worker is adequately protected." *Id.* at 111-112 (citation omitted).  Accordingly, because the CBA's definition of "overtime" applies, the agreement satisfied this second challenged element.[4]

Third, Sperry contends there is a genuine issue of material fact as to whether she is an employee "covered by a valid collective bargaining agreement," *see* § 514, arguing the initial side agreement setting the terms of a 24-hour workweek "lacks validity" in the first instance.  (Pl. Opp., ECF No. 32, 9:21).  SUSA has been unable to produce a written copy of the agreement, which it claims was formed between APS and the IUSO sometime in 1999 or 2000.  Nonetheless, SUSA argues that a reasonable juror would be constrained to find that Sperry was covered by a valid CBA setting out the terms of the 24-hour work shift.  In support, SUSA submits deposition testimony from Michael Ferko, who testified as to the side agreement's material terms—in particular, that EMTs working at USS-POSCO would not be compensated for "downtime" hours.  It also submits a two-page written proposal, drawn up prior to the final agreement, setting out suggested terms for the purported side CBA.  Additionally, Sperry's deposition testimony supports the notion that *some* sort of side agreement was made prior to her employment—working under a pre-existing agreement

---

[4] Sperry invokes *Gregory v. SCIE, LLC*, 317 F.3d 1050 (9th Cir. 2003), wherein the Ninth Circuit held that "all hours worked" in § 514 is a term defined by state law, not by the CBA. *Id.* at 1053.  To the extent *Gregory* and *Vranish* are in conflict, Sperry is incorrect to assert that a court in this district should sooner follow the Ninth Circuit's interpretation of state law.  Moreover, the court in *Vranish* found the Ninth Circuit's opinion in *Gregory* to be "of no assistance," as "[t]he issue in *Gregory* was federal preemption."  223 Cal. App. 4th at 110, n.3.

1 governing 24-hour shifts. Sperry also testified that the 24-hour shift was in place the entire time she
2 worked at USS-POSCO.

3 Taken together, SUSA's evidence might well lead a reasonable juror to conclude that a valid
4 CBA governed Sperry's 24-hour shifts at the USS-POSCO plant. It does not, however, foreclose
5 the possibility that another reasonable juror might come to a different conclusion. Although Ferko
6 testified to the material terms of the agreement, he also acknowledged that he "[couldn't] say"
7 whether the final agreement differed from the written proposal in the record. (Ferko Dep. 59:3, ECF
8 No. 31-2, Exh. 6). Although Sperry offers little to undercut the validity of the purported side
9 agreement, the evidence must be construed in her favor on a motion for summary judgment.

10 In sum, there are two defects with SUSA's exemption argument. First, and most
11 significantly, the CBA does not provide "a regular hourly rate of pay for those employees of not less
12 than 30 percent more than the state minimum wage." § 514. Second, there is a genuine dispute of
13 fact as to whether Sperry was covered by a "valid" CBA. Accordingly, SUSA cannot invoke the §
14 514 exemption.

     *ii.*  <u>LMRA Preemption</u>

16 Section 301 of the Labor Management Relations Act vests jurisdiction in federal courts over
17 "[s]uits for violation of contracts between an employer and a labor organization representing
18 employees in an industry affecting commerce." 29 U.S.C. § 185(a). The statute preempts claims
19 whose resolution "is substantially dependent upon analysis of the terms of [a collective bargaining
20 agreement]." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). "However, § 301 does not
21 preempt a claim alleging state law substantive rights that apply without regard to a CBA and can be
22 resolved without interpreting a CBA." *Gregory*, 317 F.3d at 1052 (citing *Lingle v. Norge Div. of
23 Magic Chef, Inc.* 486 U.S. 399, 413 (1988)). Courts undertake a two-step analysis to determine
24 whether § 301 preempts a plaintiff's claim. First, if the asserted claim involves a right that exists
25 "solely as a result of the CBA," and not a right conferred upon the employee by virtue of state law,
26 "then the claim is preempted, and [the court's] analysis ends there." *Burnside v. Kiewit Pac. Corp.*,
27 491 F.3d 1053, 1059 (9th Cir. 2007). "If, however, the right exists independently of the CBA, [the
28 court] must still consider whether it is nevertheless 'substantially dependent on analysis of a

No. C 13-0906 RS
ORDER ON MOTION FOR SUMMARY JUDGMENT

9

collective-bargaining agreement.'" *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)).

SUSA first argues that because Sperry is exempted from the protections of § 510 by way of § 514, her overtime premium claim does not proceed under any right conferred by state law. This argument assumes, however, that SUSA is entitled to the § 514 exemption. As described above, this is not so. Sperry's second claim therefore proceeds under a right conferred upon the employee by virtue of state law.

Moving to the second step, SUSA maintains that Sperry's § 510 claim is "substantially dependent" on analysis of the CBA. *See id.* This, too, is unpersuasive. Sperry's second claim is relatively straightforward: she seeks overtime premium pay for all hours worked in excess of eight per shift. Despite SUSA's insistence that resolving this claim will require interpretation of CBA provisions "pertaining to" Sperry's regular rate, premium rate, overtime rate, and "other terms documenting the intentions of the parties to the CBA," there is no indication that Sperry's second claim hinges on a single disputed term of the CBA. (Def. Mot., ECF No. 31, 17:23-24). SUSA invokes *Firestone v. S. California Gas Co.*, 219 F.3d 1063 (9th Cir. 2000), wherein the Ninth Circuit held that the plaintiff's California law overtime claim was preempted by § 301. In *Firestone*, though, the parties disagreed as to how to calculate the plaintiff's "regular rate" and overtime rate under the "complex" pay and overtime provisions of the governing CBA. *See id.* at 1064. Here, by contrast, there is no apparent dispute over Sperry's regular rate.[5] As the court in *Firestone* made clear, "[w]hen the meaning of particular contract terms is not disputed, the fact that a collective bargaining agreement must be consulted for information will not result in § 301 preemption." *Id.* at 1065 (citations omitted).

Because Sperry's § 510 claim arises under state law and is not substantially dependent on analysis of the CBA, it is not preempted by § 310 of the LMRA. Accordingly, SUSA's motion is denied with respect to the second claim.

---

[5] The CBA does not list Sperry's specific pay rate. To resolve this claim, the finder of fact will need to examine Sperry's payroll records—documents that are, of course, separate from the CBA itself. *See Gregory*, 317 F.3d at 1053 (rejecting employer's § 301 preemption argument where there was no dispute over CBA terms and "all that was needed to determine [the employee's] claim were the earning reports for each day worked").

C. Third Claim: Failure to Provide Meal Periods (Cal. Labor Code § 226.7(b))

Sperry's third claim invokes Labor Code § 226.7(b), which requires that employers provide meal and rest periods in accordance with standards promulgated by the Industrial Welfare Commission. The relevant IWC Wage Order states that employers must provide a meal break for all shifts worked in excess of five hours. *See* IWC Wage Order 4-2001 § 11(A). If the employer fails to do so, it must provide the employee one additional hour of pay at her regular rate of compensation. *Id.* at § 11(B); Cal. Lab. Code § 512. SUSA raises three challenges to this claim: (i) that Sperry is exempted from this requirement, (ii) that this claim is preempted by § 301 of the LRMA, and (iii) that Sperry agreed to take, and did take, lawful on-duty meal periods instead of off-duty meal breaks.

SUSA's first line of attack is virtually identical to the exemption argument it advanced against Sperry's second claim. Similar to § 514, Labor Code § 512 exempts workers who are covered by a valid collective bargaining agreement that provides, among other things, premium overtime pay and hourly pay of at least 130% of the state minimum wage. *See* Cal. Lab. Code §§ 512(e), (f)(3). For the same reasons that SUSA cannot invoke the § 514 exemption, the § 512 exemption is inapplicable, too. SUSA's preemption argument, which is premised on the false assumption that Sperry is exempt from the Labor Code's protection in the first place, is similarly unpersuasive. Because her meal period claim arises under a state law right and is not "substantially dependent" on CBA analysis, it is not preempted by the LMRA. *See Caterpillar Inc.*, 482 U.S. at 394 (quotation marks and citation omitted).

SUSA's third argument claims that instead of giving Sperry a traditional meal period, the employer provided her an "on duty" meal period. *See* Wage Order 4-2001 § 11(A) (in lieu of a meal break, an employee may be given an on-duty meal period counting as "time worked"). The requirements for a valid "on-duty" meal period are:

> An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

*Id.* First, it is undisputed that Sperry signed such an agreement. Second, because Sperry's duties prevented her from leaving the premises, SUSA argues that she qualified for on-duty meal periods. Her employer further contends that because it authorized and permitted her to take such breaks, and because Sperry *admits* to having taken on-duty meal breaks on a regular basis, it cannot be liable under Labor Code § 512.

Instead of engaging SUSA's argument on the merits, Sperry raises a procedural objection, asserting that the availability of on-duty meal periods is an affirmative defense that SUSA failed to raise in its Answer to her Complaint. SUSA disagrees, arguing it was not obligated to raise the availability of on-the-job meal periods as an affirmative defense.[6] The California Division of Labor Standards Enforcement (DLSE) has issued guidance letters indicating that the employer is burdened to prove that an on-the-job meal period is warranted. *See* DLSE Opinion Letter 2002.09.04 at 2-3 ("Finally, the burden rests on the employer for establishing the facts that would justify an on-duty meal period."); *accord*, DLSE Opinion Letter 2009.06.09 ("the burden is on the Company to establish facts justifying any on-duty meal period"). While DLSE letters are not entitled to deference, federal courts in California have nonetheless recognized their persuasive value on matters pertaining to Labor Code compliance. *See, e.g., Cardenas v. McLane FoodServices, Inc.*, 796 F. Supp. 2d 1246, 1251 (C.D. Cal. 2011). Moreover, SUSA fails to marshal any compelling support for its contrary position. To be sure, the relevant Wage Order states that "*[u]nless* the employee is relieved of all duty during a 30 minute meal period, the meal period *shall be considered* an 'on duty' meal period and counted as time worked." Wage Order 4-2001 § 11(A) (emphasis added). It goes on to explain, however, that such periods are available "*only* when the nature of the work prevents an employee from being relieved of all duty" and when the parties execute a written agreement explicitly noting that the employee can revoke the arrangement at any time. *Id.* (emphasis added). On-the-job meal periods are therefore permissible only in limited circumstances. Because the employer will generally be in a better position to come forward with information regarding (i) the

---

[6] SUSA also advances an apparent waiver argument, noting that Sperry did not object to certain October 2013 interrogatories regarding her contention that her job responsibilities did not preclude her from taking an off-duty meal break. It is far from clear that these interrogatories would have put Sperry on notice of SUSA's affirmative defense.

nature of an employee's job responsibilities and (ii) any written agreements authorizing on-duty meal periods, it makes sense to conclude, as the DLSE did, that the employer is burdened to show that on-duty meal periods are justified. Accordingly, the provision of on-duty meal periods is an affirmative defense that SUSA should have raised in its Answer.[7] Having advanced three deficient arguments, SUSA's motion is denied as to the third claim.

D. Fourth Claim: Failure to Provide Rest Periods (§ 226.7(b))

Sperry's fourth claim alleges that SUSA failed to comply with Wage Order 4 § 12(a), which provides that employees must receive ten minutes of paid rest time for every four hours of work. Under the terms of the Wage Order, Sperry was entitled to sixty minutes of paid rest time during each 24-hour shift. She claims, however, that she received less.

Sperry focuses on the text of the CBA, which provides that "[e]ach full-time employee shall be entitled to thirty (30) minutes of paid non-working time per day which shall be taken in two rest periods[.]" CBA § 13.6 (ECF No. 31, Exh. 1). This, she argues, demonstrates that SUSA failed to authorize the sixty minutes of rest breaks required for each 24-hour shift.[8] SUSA, on the other hand, downplays the significance of the CBA text while emphasizing the facts of Sperry's employment—specifically, that she took plenty of rest breaks during her 24-hour shifts. In support, SUSA points to Sperry's deposition testimony, which is rife with admissions that she took rest breaks to engage in various personal and recreational activities—smoking, studying, surfing the internet, doing her laundry, exercising, snacking, and so on. Yet while it is apparent that Sperry engaged in plenty of rest breaks, SUSA does not submit the sort of evidence that would *compel* a conclusion that, as a matter of law, its former employee has no claim for insufficient rest periods. It is not enough that SUSA points to dozens of examples where Sperry admits to taking recreational breaks on the job. Nor is it sufficient for SUSA to submit, without further summary or explanation,

---

[7] Due to the dearth of mandatory authority on this issue, SUSA should not be penalized for this procedural misstep. Defendant is hereby granted leave to amend its Answer within twenty days of the date of this order. After SUSA lodges an amended answer, discovery will be reopened for the limited purpose of addressing this affirmative defense.

[8] SUSA correctly contends that an employer need not put its rest break policy in writing. It also notes that nothing in the CBA *limits* the employee to taking 30 minutes of rest breaks. Nonetheless, the CBA language provides *some* support for Sperry's claim that her employer did not authorize sufficient rest breaks for 24-hour EMT shifts.

hundreds upon hundreds of pages of Sperry's Daily Activity Reports (DARs) purportedly showing that during every shift she (i) took sufficient breaks and/or (ii) failed to report that she missed any required breaks.[9]  Absent meaningful guidance from the moving party, a court deciding a motion for summary judgment cannot be expected to wade through reams of documents and simply "figure out" whether there is a genuine dispute of material fact.  *Cf. Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)) ("Judges are not like pigs, hunting for truffles buried in briefs.").  After hearing Sperry's testimony, reviewing Sperry's DARs, and hearing argument as to how SUSA's employment records should be interpreted, the trier of fact may well conclude that Sperry took all the breaks she deserved under the requisite Wage Order.  At summary judgment, however, this evidence must be viewed in the light most favorable to the non-moving party, and SUSA has not foreclosed the possibility that a reasonable juror could find that it failed to authorize and provide adequate rest breaks.

SUSA further argues that regardless of what is reflected in Sperry's testimony and in her DARs, it did all it was required to do under *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012), a recent case clarifying the nature of a California employer's obligation to provide meal and rest breaks.  In *Brinker*, the California Supreme Court held:

> An employer's duty with respect to meal breaks . . . is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30–minute break, and does not impede or discourage them from doing so. . . . On the other hand, the employer is not obligated to police meal breaks and ensure no work thereafter is performed.  Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations[.]

*Id.* at 1040-41.  From this, SUSA posits that an employer "is under no legal obligation to police its employees or ensure that meal and rest periods are actually taken by employees." (ECF No. 31,

---

[9] Sperry was obligated under the CBA to indicate on every DAR or time card when she did *not* receive a required rest break on a given day.  At summary judgment, she does not point to a single DAR indicating that she missed any required rest period.  Nonetheless, Sperry contends she was "never" actually "relieved" of duty, noting that at all times she was required to respond to emergencies within a two-minute period. (ECF No. 32, 15:1-2).  She provides no authority, however, for the notion that an employee cannot enjoy a rest break while remaining "on call."

20:20-22). Assuming this language from *Brinker* is applicable to paid rest periods, it can only help SUSA to the extent the employer *authorized* the requisite breaks in the first place. Because a reasonable juror could find that SUSA did not authorize sixty minutes of paid rest breaks during Sperry's 24-hour shifts, the motion is denied with respect to Sperry's fourth claim.

### E. Fifth and Seventh Claims

Sperry's fifth claim arises under Lab. Code § 226(e), which imposes liability for failure to provide accurate pay stubs. Sperry contends that because she was underpaid in the first instance, her paystubs necessarily violate this provision, too. Her seventh claim arises under California's Unfair Competition Law, alleging that SUSA's business practices were unfair, unlawful, and/or fraudulent. *See* Cal. Bus. & Prof. Code § 17200. SUSA advances one argument against these claims: because Sperry's fifth and seventh claims are predicated on the unlawfulness of the conduct alleged in her other deficient claims, they necessarily fail. Because Sperry's aforementioned claims survive, however, this argument has no force. The motion is therefore denied with respect to the fifth and seventh claims.

## V. CONCLUSION

For the reasons set forth above, SUSA fails to demonstrate that it is entitled to summary judgment on any of Sperry's claims for relief. Accordingly, the motion is denied. SUSA is hereby granted leave to amend its Answer within twenty (20) days of the date of its order. If SUSA elects to amend, discovery will be reopened for the limited purpose of exploring whether SUSA was entitled to provide on-duty meal periods in lieu of off-duty meal breaks. The clerk is directed to vacate the May 29, 2014 pretrial conference and June 9, 2014 trial date. The parties are directed to attend a further case management conference on May 29, 2014 at 10:00 a.m. A joint case management statement is due one week beforehand.

IT IS SO ORDERED.

Dated: 4/25/14

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

No. C 13-0906 RS
ORDER ON MOTION FOR SUMMARY JUDGMENT